

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS

## AUSTIN

GERALD C. MANN
ATTORNEY GENERAL

Mr. O. P. Lookhart
Chairman, Board of Insurance Commissioners
Austin, Texas

Dear Sir:

Opinion No. O-4237
Re: Consolidation of insurance
companies under Art. 5040-5041,
Vernon's R.C.S. 1925

You have submitted to me several questions involving the construction of Articles 5040 and 5041, Vernon's Revised Civil Statutes of Texas, relating to consolidation of insurance companies.

Your first question is:

"In a consolidation or merger under Arts. 5040 and 5041, of two companies already chartered under the laws of the State of Texas. . . . is it necessary to amend the charter of one company with a smaller capital stock than the combined stock after merger, . . . and require the designation of particular assets as representing the increase in capital stock?"

Art. 5040 provides:

"Any two or more insurance companies doing a similar line of business which are and have been substantially owned by same controlling stockholders and which have never been companies actually competing with each other, and where all of them have been previously organized under the laws of this State, may unite or consolidate upon compliance with the terms of this law. Such consolidation shall not be effectuated in violation of the anti-trust and anti-monopoly laws of this State. Before any such consolidation shall take place the parties holding at least two-thirds of the capital stock of each of the companies

NO COMMUNICATION IS TO BE CONSTRUED AS A DEPARTMENTAL OPINION UNLESS APPROVED BY THE ATTORNEY GENERAL OR FIRST ASSISTANT

Mr. O. F. Lockhart, page 2

shall vote in favor thereof at a separate meeting of the stockholders of each company called for such purpose. Such meeting may be called in the manner provided in the by-laws of the respective companies or the laws under which such companies are organized, for calling special meetings of stockholders, except that each stockholder shall be notified by mail of the time and place and object of such meeting."

Art. 5041 provides:

"Such companies proposing to consolidate may unite their assets or any part thereof and become incorporated in one body under the name of any one or more of such companies or under any other name that may be agreed upon, and issue stock in such corporation to the stockholders of each of the companies consolidated, the actual value of which stock in the new company shall bear the same proportion to the actual value of the stock surrendered by such stockholders as the entire assets of the company surrendering such stock bears to the entire assets of the new company, which value shall be agreed upon by the board of directors of each company; provided, that said stockholders (holding two-thirds of the stock) may at the meeting provided for in the preceding article, delegate the valuation of assets to a committee of stockholders appointed by their respective boards of directors; or

"2. One company may take over all the assets of the other companies proposing to consolidate and issue stock to their stockholders in the proportion that the value of their stock bears to the entire value of the assets of the company in which they are stockholders, and for this purpose the capital stock of such purchasing company may be increased, as now or may be hereafter provided by law.

"3. In case of consolidation under the first option provided in the first subdivision hereof, the Commissioner shall upon proof furnished of compliance with the terms hereof and being satisfied that the proposed consolidation is for the best interests of the policy holders of the respective companies and made in accordance with law, and upon the filing of articles of incorporation and other due proceedings had as required by the laws of this state, issue and deliver a charter to such new company.

"4. Such consolidation shall work a dissolution of the companies absorbed, but shall in no wise prejudice the right of any creditor of any such corporation to have payment of his debt out of the assets and property thereof, nor shall any creditor be thereby deprived of, nor prejudiced in any right of action then pending or existing or which may thereafter arise against said company, and service or summons of the proper officers or agents of such new or reorganized corporation shall be deemed sufficient as to all or any of such companies.

"5. All policies of insurance outstanding against all such companies shall by reason of such consolidation be assumed by the reorganized company, and they shall carry out the terms of such policy on the part of the insurer and be entitled to all the rights and privileges thereof and the reserves accumulating on such policy prior to such consolidation."

It will be observed that the first option provided by Art. 5041 provides for a "consolidation" and contemplates the organization of a new corporation to take over the business and assets of the consolidating companies; while the second option contemplates a "merger", with one of the corporations continuing its existence, but acquiring the assets of the others.

In the case of the "consolidation", no amendment of the charter of either of the corporations is involved; the statutes contemplates the issuance of a new charter to a "new company". The capital structure of the "new company" need not exceed the capital structure of either of the consolidating companies; all that is required is that the capital stock of the "new company" be distributed among the stockholders of the consolidating corporations in such manner that "the actual value" of the stock in the new corporation given to each stockholder "shall bear the same proportion to the actual value of the stock surrendered" by such stockholder "as the entire assets of the company surrendering such stock bears to the entire assets of the new company."

In the case of a "merger", under the second option, while the surviving company "may increase" its capital stock for the purpose of issuing its stock to stockholders of the absorbed company in the proportion "that the value of their stock bears to the entire value of the assets of the company

in which they are stockholders", the increase is not mandatory; the capital stock may remain the same, but may be reapportioned among the stockholders of the absorbing and the absorbed company.

The second branch of your question inquires whether upon "consolidation", or upon "merger" with an attendant increase in the capital stock of the surviving company for the purpose of effecting an apportionment among the stockholders of the respective companies of its stock, particular assets must be designated as representing the capital stock in the "consolidated" company on the one hand, or as representing the increase in capital stock in the "merger" on the other.

In this connection, you are concerned with the effect of Art. 4720 upon consolidations or mergers under Art. 5040 and 5041.

Art. 4720 provides:

"When the first meeting of the stockholders shall be held and the officers of the company elected, the president or secretary shall notify the Commissioner; and he shall thereupon immediately make, or cause to be made, at the expense of the company, a full and thorough examination thereof. If he finds that all of the capital stock of the company, amounting to not less than one hundred thousand dollars, has been fully paid up and is in the custody of the officers, either in cash or securities of the class in which such companies are authorized by this chapter to invest or loan their funds, he shall issue to such company a certificate of authority to transact such kind or kinds of insurance business within this State as such officers may apply for and as may be authorized by its charter; which certificate shall expire on the last day of February next after the date of its issuance. Before such certificate is issued, not less than two officers of such company shall execute and file with the Commissioner a sworn schedule of all the assets of the company exhibited to him upon such examination, showing the value thereof, together with a sworn statement that the same are bona fide, the unconditional and unencumbered property of the company and are worth the amounts stated in such schedule. No original or first certificate of authority shall be granted, except in conformity herewith, regardless of the date of filing of the articles of incorporation with the Commissioner."

Mr. O. P. Lockhart, page 5

Article 4721 provides:

"Each life insurance company, or accident insurance
company, or life and accident, health and accident, or life,
health and accident insurance company, organized under the
laws of this State, shall, after the first day of January
of each year and before the first day of March following,
and before the renewal of its certificate of authority to
transact business, prepare, under oath of two of its offi-
cers, and deposit in the office of the Commissioner, a state-
ment accompanied with the fee for filing annual statements
of ten dollars, showing the condition of the company on the
thirty-first day of December the next preceding, which shall
include a statement in detail showing the character of its
assets and liabilities on that date, the amount and character
of business transacted, moneys received and how expended dur-
ing the year, and the number and amount of its policies, in
force on that date in Texas, and the total amount of its
policies in force."

Article 4722 provides:

"Whenever any such company, transacting insurance
business in this State, shall have filed its annual state-
ment in accordance with the preceding article, showing a
condition which entitles it to transact business in this
State in accordance with the provisions of this chapter,
the Commissioner shall, upon a receipt of a fee of one dollar,
issue a renewal certificate of authority to such company,
which shall expire on the last day of February of the subse-
quent year."

While, under Art. 4720, an insurance corporation of
the class with which Chapter 3, Title 78, of the Revised Civil
Statutes is concerned, embarking originally upon the business
of writing insurance, must, as a condition precedent to the
issuance of its certificate of authority, have on hand all of
its capital stock in cash or securities in which its funds may
be invested, and while, at this stage, its capital stock cannot
be represented by real property, encumbered or not, there is

no provision of law which requires that its capital stock be constantly maintained in this condition. On the contrary, for instance, Art. 4726 contemplates that, as a going concern, the corporation may find it necessary to acquire and hold certain real estate. Obviously, the value of this real estate, acquired and held in accordance with the provisions of that article, must be regarded as an asset, not only for the purpose of determining solvency, but also for the purpose of determining whether the corporate capital structure is impaired. The provisions of Articles 4721 and 4722, respecting issuance of renewal certificates, do not require that renewal certificates shall not issue unless the capital stock is on hand in full in cash or securities at the time mentioned.

When, under Articles 5040 and 5041, a "consolidation" is effected under the first option, a new corporation results. In the case of a "merger" under the second option, the absorbing company continues to exist. But in each instance the legislative intent is to permit the carrying on of the business of two or more going concerns under and by a single legal entity, and the requirements to be met with respect to capital structure of the resulting single corporation must be viewed in the light of this purpose.

Since the statutes on consolidation or merger have in contemplation the joinder of two or more going concerns into a single legal entity, in the opinion of the department it was not intended that the authority of the resulting single corporation to do business should be judged by the rule prescribed in Article 4720 with respect to the issuance of an "original or first" certificate of authority to a corporation entering for the first time into the insurance business. Rather, we are of the opinion that the capital structure of the resulting single corporation may be adjusted to the net value of the assets acquired and possessed by the resulting single entity; that the consolidated corporation's stock may be fixed at, or the stock of the merged corporation increased to, such an amount as that the capital of the concern will not exceed the net value of its assets.

The legislature contemplated the joinder of going concerns as such; it did not intend that as a condition to consolidation or merger the consolidating or merging corporations should be required to place themselves in the position which they were required to occupy when they began to do business.

Mr. O. P. Lockhart, page 7

Nor was it intended that the resulting single corporation, carrying on and continuing the business of the several corporations, should be required to place its assets in the shape required of a corporation newly organized and embarking upon the business. The designation of particular assets as "capital stock assets" in the case of a consolidation or merger is not required; the capital stock is paid in full by the transfer of the assets of the "consolidating" or "merging" companies and may be fixed at such an amount as does not exceed the <u>net value</u> of all the assets acquired and held by the resulting single corporation; and the stockholders are entitled to stock in the proportion of their respective contributions to that net value through the surrender of their stock in the companies consolidating or merging.

The answer we have given above to your first question renders an answer to your other questions unnecessary.

Yours truly

ATTORNEY GENERAL OF TEXAS

By     *R W Fairchild*

R. W. Fairchild
Assistant

RWF:AMM

APPROVED JUN 2, 1942

*Gerald C. Mann*

ATTORNEY GENERAL OF TEXAS